UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMIE HENDERSON,

            Plaintiff,        Civil Action No. 13-13225
                                  Honorable Terrence G. Berg
                                  Magistrate Judge David R. Grand
v.

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 13]

Plaintiff Tammie Henderson ("Henderson") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 13] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

### I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Henderson is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [13] be GRANTED, Henderson's Motion for Summary Judgment [10] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Procedural History

On November 18, 2010, Henderson filed an application for DIB, alleging a disability onset date of June 9, 2010. (Tr. 132-33). This application was denied initially on February 11, 2011. (Tr. 67-70). Henderson filed a timely request for an administrative hearing, which was held on December 13, 2011, before ALJ Regina Sobrino. (Tr. 29-55). Henderson, who was represented by attorney Daniel Pollard, testified at the hearing, as did vocational expert Stephanie Lorey. (*Id.*). On January 25, 2012, the ALJ issued a written decision finding that Henderson is not disabled. (Tr. 16-25). On May 29, 2013, the Appeals Council denied review. (Tr. 1-6). Henderson filed for judicial review of the final decision on July 26, 2013. (Doc. #1).

### B.     Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

2

> regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

*1.   Plaintiff's Reports and Testimony*

At the time of the administrative hearing, Henderson was 52 years old.  (Tr. 32).  She reported living alone in a house.  (Tr. 162).  She completed high school and took some college classes, but did not obtain a degree.  (Tr. 32-33).  From March 1999 through June 9, 2010, Henderson worked on an assembly line; at that time, however, she stopped working because of shoulder and neck pain, depression, and anxiety.  (Tr. 33, 35-36, 151-52).

Henderson reported being treated by several physicians for her conditions and taking a number of medications, which cause mild side effects (drowsiness and wooziness).  (Tr. 33, 39-40, 153-56, 169).  She indicated that her conditions impede her ability to lift, reach, concentrate, use her hands, and affect her memory.  (Tr. 167).  She has difficulty finishing what she starts, following instructions, handling stress, and handling changes in routine.  (Tr. 42, 167-68).  She testified that three or four days a week, she stays in bed all day.  (Tr. 42).

When asked to describe her daily activities, Henderson indicated that she is able to prepare simple meals, do some light housework, drive, and go grocery shopping (although she sometimes has help).  (Tr. 38-39, 164-65).  She has difficulty with personal care (especially fastening clothing, washing her back, and curling her hair).  (Tr. 38, 163).  She has difficulty sleeping because shoulder pain wakes her up in the night.  (Tr. 41, 163).  She is able to pay bills, count change, and handle a checking and savings account, and she spends time with others.  (Tr. 165-66).  She can stand for thirty minutes at a time, sit for at least fifteen minutes at a time, and walk approximately ½ mile before her shoulder and neck begin to hurt.  (Tr. 36).  Henderson testified that she can lift only five pounds with her right (dominant) hand and up to ten pounds with her left hand.  (Tr. 36-37).  She further indicated that she has difficulty picking up pens, pencils, and coins (because her right hand swells); reaching, bending at the waist, and bending at the knees (due to neck and shoulder strain); and climbing stairs (because it hurts to hold her head up).  (Tr. 37-38).

        *2.*     *Medical Evidence*

The Court has thoroughly reviewed Henderson's medical record.  In lieu of summarizing Henderson's medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

        *3.*     *The ALJ's Findings*

Following the five-step sequential analysis, the ALJ found that Henderson is not disabled under the Act.  At Step One, the ALJ found that Henderson has not engaged in substantial gainful activity since June 9, 2010, her alleged onset date.  (Tr. 18).  At Step Two, the ALJ found that Henderson has the severe impairments of degenerative disc disease, degenerative joint disease, depression, and anxiety.  (*Id.*).  At Step Three, the ALJ found that her impairments,

4

whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 18-20).

The ALJ then assessed Henderson's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: no climbing of ladders; occasional climbing of stairs, crouching, and stooping; no crawling; no reaching at or above shoulder level and no more than occasional reaching in other directions with the right (dominant) arm; frequent handling and fingering with the right hand; limited to performing simple, routine, repetitive, low stress work (defined as no fast-paced work, no work that involves quotas, and no assembly line work). (Tr. 20-23).

At Step Four, the ALJ determined that Henderson is unable to perform her past relevant work. (Tr. 23). At Step Five, the ALJ concluded, based in part on vocational expert ("VE") testimony, that Henderson is capable of performing the light jobs of counter clerk (2,100 jobs in the lower peninsula of Michigan) and inspector (4,800 jobs). (Tr. 24). As a result, the ALJ concluded that Henderson is not disabled under the Act. (Tr. 25).

### D.     **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**E.     Analysis**

    *1.     Waiver*

It is difficult to discern Henderson's specific arguments in support of her motion for summary judgment. Her motion consists almost entirely of a compilation of quotations of black letter case law, with little accompanying analysis or application of that law to the facts of her case. Henderson does assert (in a heading in her brief) that the ALJ erred in "assessing [her] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [her] impairments." (Doc. #10 at 6). But, Henderson does not explain with any particularity whatsoever which medical records the ALJ purportedly "fail[ed] to properly evaluate." (*Id.*). Indeed, she does not cite to any treating physician opinion, much less provide a fact-based explanation of how the ALJ purportedly erred in analyzing her treating physician records.

In response to Henderson's motion, the Commissioner argues that Henderson has waived any challenge to the ALJ's assessment of the medical opinion evidence, as well as the ALJ's reliance on the VE's testimony, because she has not made any substantive claims of error regarding those aspects of the ALJ's decision.[1] (Doc. #1 at 20-21). Indeed, Henderson's brief is very similar to one her counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Henderson's

---

[1] Henderson provides the Court with nearly three pages of black letter law regarding the treating physician rule, but does not actually argue that the rule was violated here. (Doc. #10 at 12-14). Her failure to even make – let alone fully develop – an argument regarding application of the treating physician rule constitutes a waiver of any argument she might otherwise have had on this issue. *See Terrell v. Comm'r of Soc. Sec.*, 2013 WL 5178541, at *9 (E.D. Mich. Sept. 10, 2013) ("[P]laintiff cannot simply make the claim that the ALJ committed an error, while leaving it to the Court to scour the record to support this claim.").

counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). While Henderson's opening brief in the instant case was filed prior to issuance of the *Fielder* opinion, the Court notes that it is yet another "one-size-fits-all" brief, containing the very same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. Here, then, the Court could find that Henderson has waived her arguments regarding the ALJ's assessment of the medical opinion evidence and the adequacy of the hypothetical posed to the VE. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, for the sake of completeness, the Court will endeavor to address the arguments raised by Henderson.

        2.     *Credibility*

Henderson challenges the ALJ's credibility determination, asserting that her conclusion that she was not entirely credible was "clearly in error" because "her testimony regarding her severe medical impairments is backed up by medical documentation." (Doc. #10 at 11). In making this assertion, Henderson ignores the reasons articulated by the ALJ for discounting her

credibility and fails to cite any medical evidence the ALJ actually failed to properly consider. As set forth more fully below, the ALJ reasonably discounted Henderson's allegations of disabling limitations because they were inconsistent with the objective medical evidence, the opinions of the state agency reviewing physicians, and her daily activities. (Tr. 21-23).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §404.1529.

Here, the ALJ thoroughly discussed the objective medical evidence regarding Henderson's impairments. For example, the ALJ noted that an October 2010 MRI of Henderson's cervical spine revealed degenerative disc disease at C4-C7 with loss of disc height and endplate spurring at those levels, "mild" central canal stenosis at C4-C5, and "mild"

foraminal narrowing at C4-C5. (Tr. 21 (citing Tr. 220-21)). Moreover, the ALJ noted that a November 2010 MRI of Henderson's right shoulder revealed a partial rotator cuff tear and degenerative changes in the humeral head. (*Id.* (citing Tr. 218-19)). However, the ALJ also noted that, in December 2010, Henderson underwent an orthopedic evaluation, reporting right shoulder pain, but telling the doctor that she was on medical leave because of depression. (*Id.* (citing Tr. 224)). On examination, Henderson had pain and a positive impingement sign in the right shoulder, but normal strength, stability, and range of motion of the neck. (Tr. 224-25). Following that evaluation, the doctor recommended non-operative management of her shoulder pain, including physical therapy. (Tr. 224). As the ALJ noted, however, Henderson did not begin physical therapy until March 29, 2011. (Tr. 21 (citing Tr. 279-80)). She was discharged on April 25, 2011, after attending twelve sessions, at which time the physical therapist noted that although Henderson continued to report subjective pain complaints, she had made objective improvements in strength and range of motion. (*Id.* (citing Tr. 279)). On May 10, 2011, Henderson underwent another evaluation for neck and right shoulder pain, this time with Dr. Gavin Awerbuch. (Tr. 289-90). On physical examination, Dr. Awerbuch noted mildly decreased range of motion in the neck and right shoulder, and mildly decreased strength in the right shoulder. (Tr. 280). He recommended further testing to "evaluate for possible nerve injury," but the record contains no indication that Henderson ever underwent such testing. (*Id.*). As the ALJ noted, there is no record of any medical treatment for Henderson's neck or shoulder pain after May 2011; rather, the record reflects that she missed medical appointments in August and November 2011 and did not reschedule them. (Tr. 21, 358).

  In light of this objective medical evidence (and in some respects, lack thereof), the ALJ's RFC finding adequately accommodated Henderson's shoulder and neck pain and resulting

10

limitation. (Tr. 20). The ALJ concluded that Henderson could not reach at or above shoulder level with her right arm, reach in other directions more than occasionally with her right arm, or perform more than frequent handling and fingering with her right hand. (*Id.*). In addition, the ALJ found that Henderson could only occasionally climb stairs (accommodating her testimony that she had difficulty holding her head up when she does so). (*Id.*). Henderson has offered no evidence justifying greater limitations than those the ALJ identified resulting from her neck and shoulder pain.

With respect to Henderson's mental impairments, she asserts in her motion only that she had "symptoms of 'depressed mood,' irritability, and anxiety." (Doc. #10 at 11). The ALJ acknowledged in her decision, however, that Henderson had received psychiatric treatment during the relevant period, reporting symptoms that included mood swings, anger, stress, and irritability. (Tr. 22). The ALJ further noted that despite these symptoms, Henderson was able to live independently; reported no difficulty getting along with others; and had not required hospitalization or acute care for any exacerbation of her mental health symptoms. (*Id.*). The ALJ specifically accommodated Henderson's depression and anxiety by limiting her to simple, routine, repetitive work in a stable, "low stress" environment (defined as one that did not involve fast-paced work, quotas, or assembly line work). (Tr. 20, 22). Henderson has not identified any additional mental limitations that she believes would have been appropriate, and there is no indication in the record that additional restrictions are warranted.

In addition, the ALJ noted that Henderson's allegations of disabling limitations were not consistent with her reported social functioning and daily activities. (Tr. 21-22). For example, the ALJ noted that Henderson was able to live alone, attend to personal care tasks, prepare simple meals, perform some household chores, manage her finances, drive a vehicle, and shop.

11

(Tr. 22, 163-66). It was appropriate for the ALJ to consider these facts in assessing her credibility. *See* 20 C.F.R. §404.1529(c)(3)(i) (an ALJ may consider a claimant's activities of daily living in evaluating credibility); *see also Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain).

In the face of all of this substantial evidence, Henderson relies primarily on own her testimony and her subjective complaints to physicians. (Doc. #8 at 10-11). However, even where there is "objective medical evidence of an underlying medical condition …an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). The only other evidence Henderson points to as supporting her contentions are: (1) the fact that she was diagnosed with medical conditions; and (2) the findings in her 2010 MRIs. (*Id.*). But, this does not change the above analysis.

With respect to Henderson's diagnoses, the ALJ specifically acknowledged that she had degenerative disc disease, degenerative joint disease, depression, and anxiety. (Tr. 18). However, the "mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *Welch v. Comm'r of Soc. Sec.*, 2014 WL 978201, at *7 (W.D. Mich. Mar. 12, 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988), and *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)). And, with respect to Henderson's MRIs, it is true that they showed degenerative disc disease at C4-C7; "mild" central canal stenosis at C4-C5; "mild" foraminal narrowing at C4-C5; and a partial rotator cuff tear of the right shoulder. (Tr. 218-21). But, the ALJ adequately accommodated these conditions by restricting Henderson to light work with various other restrictions, including, *inter alia*, no reaching at or above shoulder level and no more than occasional reaching in other

directions with her right (dominant) arm (Tr. 20), and Henderson has not shown why such accommodations were inadequate or otherwise flawed. Thus, Henderson has not established that the ALJ erred in evaluating the objective medical evidence.[2]

In sum, while Henderson might disagree with the ALJ's credibility assessment, she has failed to articulate a basis for overturning that finding, particularly in light of the great weight and deference an ALJ's credibility finding is due on review. *See Kirk,* 667 F.2d at 538; *Smith*, 307 F.3d at 379 (ALJ's credibility determination will not be disturbed "absent compelling reason"). Here, where the ALJ gave a reasonable explanation for discounting Henderson's credibility, and that explanation is supported by substantial evidence, her credibility finding should not be disturbed.

   3.   *Adequacy of the Hypothetical*

Henderson also asserts in her brief that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." (Doc. #10 at 10 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Then, however, Henderson simply states in conclusory fashion that "[b]ecause each element of the [ALJ's] hypothetical does not accurately describe [her] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*Id.*). Although Henderson phrases this as a Step Five finding, the Court concludes that Henderson is attempting

---

[2] In addition, the ALJ considered and weighed the findings of the state agency physicians. (Tr. 22-23). Specifically, the ALJ gave "partial weight" to Dr. Gupta's opinion that Henderson has the RFC to perform light work that does not involve more than occasional overhead reaching with the right arm. (Tr. 22 (citing Tr. 61-63)). And, the ALJ gave "great weight" to Dr. Kaul's opinion that Henderson's mental impairments cause only mild limitations in performing daily activities and maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. (Tr. 23 (citing Tr. 63-64)). Henderson does not challenge these conclusions, and both they, and the RFC into which they were incorporated, are supported by substantial evidence.

to refute the RFC finding via a purported Step Five error. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

In her decision, the ALJ thoroughly reviewed and discussed the record evidence, concluding that Henderson has the RFC to perform light work, with the following additional limitations: no climbing of ladders; occasional climbing of stairs, crouching, and stooping; no crawling; no reaching at or above shoulder level and no more than occasional reaching in other directions with the right (dominant) arm; frequent handling and fingering with the right hand; limited to performing simple, routine, repetitive, low stress work (defined as no fast-paced work, no work that involves quotas, and no assembly line work). (Tr. 20-23). In reaching this conclusion, the ALJ considered the objective medical evidence, the opinions of the state agency reviewing physicians, and Henderson's daily activities, as detailed above.

Henderson appears to argue that the ALJ erred in failing to include in her hypothetical the fact that she would need to be absent from work more than two days a month, which she asserts would have been work preclusive. (Doc. #10 at 11). However, Henderson does not point to any evidence in the record even suggesting – let alone establishing – that she would need to be absent from work that often. And, although Henderson testified that she stays in bed all day, three or four days a week (Tr. 42), the ALJ discounted her allegations as less than fully credible, where the record evidence establishes that she has been able to live independently, perform household chores, manage her finances, drive, shop, and attend doctors' appointments. (Tr. 21-23). For these reasons, the ALJ was not required to include these limitations in the hypothetical question she posed to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003)

(an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, 2013 WL 6631463, at *9 (E.D. Mich. Dec. 17, 2013) (same). As such, Henderson's argument that the ALJ formed an inaccurate hypothetical lacks merit.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Henderson's Motion for Summary Judgment **[10]** be **DENIED**, the Commissioner's Motion **[13]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: June 19, 2014　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 19, 2014.

4:13-cv-13225-TGB-DRG   Doc # 15   Filed 06/19/14   Pg 16 of 16   Pg ID 500

                                              s/Eddrey O. Butts
                                              EDDREY O. BUTTS
                                              Case Manager

16

                                      s/Eddrey O. Butts  
                                      EDDREY O. BUTTS  
                                      Case Manager